**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MAUREEN KEENAN,<br><br>Plaintiff,<br><br>-against-<br><br>MARK PAV, CHRISTOPHER LAROCCO, REBECCA MARCUS, MAUREEN MARCUS, and COUNTY OF SUFFOLK.<br><br>Defendants. | Case No. _____ |

Plaintiff MAUREEN KEENAN, by and through her undersigned attorney, for her complaint in this matter, alleges the following:

## NATURE OF THE ACTION

1. This is an action pursuant to 42 U.S.C. § 1983 for First and Fourth Amendment violations stemming from the false arrest and malicious prosecution of Plaintiff by Defendants.

2. Defendants conspired to have a false police report filed, a report that they used to falsely arrest Plaintiff and file false charges, all with malicious intent. All charges against Plaintiff were subsequently dismissed with prejudice, but Plaintiff had to spend one night in jail and pay a criminal defense attorney as a result of Defendants' illegal actions.

## JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction over the federal claims in this matter pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367.

4. This Court has personal jurisdiction over the Defendants because all Defendants are residents of New York State and because the wrongs were committed in New York State.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because at least one defendant resides in this district and also pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred in this district.

## THE PARTIES

6. Plaintiff MAUREEN KEENAN is a citizen of New York State.

7. Defendant MARK PAV, on information and belief, is a citizen of New York State and an officer of the Suffolk County Police Department.

8. Defendant CHRISTOPHER LAROCCO, on information and belief, is a citizen of New York State and an officer of the Suffolk County Police Department

9. Defendant REBECCA MARCUS is a citizen of New York State. She is also Plaintiff's cousin. At all relevant times, she was also an officer of the New York Police Department ("NYPD").

10. Defendant MAUREEN MARCUS is a citizen of New York State. She is also Plaintiff's aunt.

11. Defendant SUFFOLK COUNTY is a municipal corporation of New York State.

## THE FACTS

12. Plaintiff has a five-year-old daughter. Nonparty Christopher Tangco is her daughter's father.

13. For years now, Plaintiff and Mr. Tangco have been involved in a bitter battle in Family Court regarding support and custody. Mr. Tangco currently has visitation rights. Mr. Tangco has repeatedly attempted to undermine Plaintiff's relationship with her daughter.

14. At some point after Plaintiff and Mr. Tangco ended their relationship, Mr. Tangco became friends with Defendants Maureen Marcus and Rebecca Marcus.

15. Defendant Maureen Marcus has repeatedly stated that she would not take sides in Plaintiff's custody dispute with Mr. Tangco, but in fact she has taken Mr. Tangco's side because of personal animosity that she has toward Plaintiff that predates the events described below. At the time of the events described below, Plaintiff was not aware of this personal animosity.

16. During 2020 and early 2021, Mr. Tangco often took his and Plaintiff's daughter to spend the weekend with Defendant Maureen Marcus at her house. Mr. Tangco refused to share Defendant Maureen Marcus's address with Plaintiff despite a legal requirement to do so and repeatedly told Plaintiff that she should contact Defendant Maureen Marcus regarding that and any other information regarding their daughter when Mr. Tangco and their daughter stayed there.

17. On or about Friday, January 15, 2021, Mr. Tango had a scheduled visitation with his and Plaintiff's daughter, a visit that was to last the three-day weekend. He was scheduled to return their daughter to Plaintiff's home on Monday, January 18, which was a holiday.

18. Mr. Tangco took his daughter as scheduled and proceeded to take her to Defendant Maureen Marcus's house for the weekend.

19. On Saturday, January 16, Plaintiff briefly spoke with her daughter. The conversation was difficult because many people were in the house talking and thus making it difficult for Plaintiff and her daughter to speak to each other. Mr. Tangco had promised the Family Court that Plaintiff would have a private space for "Facetime" with her daughter, but Mr. Tangco failed to deliver on that promise. Plaintiff and her daughter agreed that Plaintiff would call her daughter again the next morning, as they had done the night before and that morning because of the same circumstances.

20. Such a call, had it occurred, would have been a short, simple call that would have given Plaintiff the opportunity to say good morning to her daughter and tell her that she loved her.

3

Plaintiff had always done this previously when her daughter was away from home. As was the case on all other such occasions, her daughter specifically stated that she wanted to talk with Plaintiff.

21. On Sunday morning, January 17, as planned, Plaintiff called Mr. Tangco to speak with her daughter. Mr. Tangco did not answer his phone.

22. Mr. Tangco subsequently texted Plaintiff and falsely claimed that Plaintiff's daughter did not want to speak with Plaintiff. Mr. Tangco had previously made such statements and they were always false, and so Plaintiff naturally did not believe Mr. Tangco. Mr. Tangco claimed that Defendant Maureen Marcus could "attest to" the daughter's alleged desire not to speak with Plaintiff.

23. In response to this explicit suggestion to contact Defendant Maureen Marcus, Plaintiff called Defendant Maureen Marcus to speak with her daughter. Defendant Maureen Marcus did not answer her phone. Plaintiff left a voice-mail message.

24. At approximately 10:30 am that morning, Plaintiff's father sent a text to both Plaintiff and Defendant Maureen Marcus expressing concern about the fact that Plaintiff had not spoken with her daughter. Plaintiff responded that Tangco was preventing such contact and that she had not yet heard back from Defendant Maureen Marcus.

25. On a previous occasion, Mr. Tangco had taken Defendant Maureen Marcus's phone and maliciously blocked Plaintiff from that phone, unbeknownst to Defendant Maureen Marcus. When Plaintiff and Defendant Maureen Marcus discovered the block, Plaintiff assisted Defendant Maureen Marcus in restoring communication. Because Plaintiff was concerned that Mr. Tangco may have repeated this conduct, Plaintiff also called Defendant Maureen Marcus from Plaintiff's

landline phone. Defendant Maureen Marcus did not pick up that call, either. Plaintiff was forced to leave more than one message.

26. At 1:30 pm, Defendant Maureen Marcus finally responded in a text message. Defendant Maureen Marcus stated falsely that Plaintiff's daughter had not wanted to speak with her that morning and that Plaintiff should not contact her again regarding this matter.

27. Of course, not contacting Defendant Maureen Marcus again regarding her daughter was not an option for Plaintiff because Mr. Tangco had repeatedly interfered with Plaintiff's contact with her daughter and had told Plaintiff that she should contact Defendant Maureen Marcus regarding their daughter. Plaintiff thus responded that she had to contact Defendant Maureen Marcus in order to speak with her daughter on weekends when her daughter was at Defendant Maureen Marcus's home. Plaintiff further responded that the call would have been quick and simple and that Defendant Maureen Marcus was wrong to fail to answer the phone and to prevent Plaintiff from speaking with her daughter.

28. Defendant Maureen Marcus did not respond to Plaintiff. Plaintiff did not attempt to contact Defendant Maureen Marcus any further.

29. On Wednesday, January 20, Mr. Tangco had a scheduled dinner visitation with his and Plaintiff's daughter. He was to arrive at her daycare at 3:30 pm and return her to Plaintiff that evening at 6:30 pm.

30. Instead, he arrived at 12 noon and demanded that the daycare release his daughter to him. Ultimately, the daycare center called the police.

31. The daycare center also called Plaintiff and asked whether they should release her daughter to Mr. Tangco. After consulting with her own family lawyer and the law guardian, Plaintiff instructed the daycare center not to do so.

32. Mr. Tangco remained at the daycare center until 3:30. He also called the police and filed a complaint regarding Plaintiff's decision not to authorize the daycare center to release her daughter to him. By the time Mr. Tangco had completed all the necessary paperwork for his complaint, it was nearly 3:30, and the daycare center released Plaintiff's daughter to him, as originally scheduled.

33. During that time, at the daycare's request, Plaintiff drove to the daycare center. When she arrived, she remained in her car and called the daycare center on her cell phone. The daycare center informed Plaintiff that they had called the police and that the police had arrived. The officer spoke with Plaintiff. The officer quickly determined that Plaintiff had done nothing wrong.

34. Later that day, Defendants Maureen Marcus and Rebecca Marcus went to the Suffolk County Police Department.

35. At the police station, Maureen Marcus and Rebecca Marcus met with Defendants Pav and Larocco. They told Defendants Pav and Larocco that they wanted Plaintiff arrested. Rebecca Marcus displayed her NYPD badge and used her status as an NYPD officer to persuade Defendants Pav and Larocco to arrest Plaintiff.

36. Maureen Marcus signed a written statement against Plaintiff. The statement contained numerous falsehoods, some of which were minor points about her relationship with Mr. Tangco and some of which were more significant.

37. Most significantly, Defendant Maureen Marcus stated in the written statement that Plaintiff's texts "caused [Defendant Maureen Marcus] annoyance and alarm," when in fact Defendant Maureen Marcus was not alarmed about anything and had no fear of any harm to herself or anyone else.

38. Defendant Maureen Marcus also stated in the written statement that she was afraid that Plaintiff would "end up at [her] house and caus[e] a scene." In fact, Defendant Maureen Marcus had no fear of anything like that occurring.

39. Defendant Rebecca Marcus also signed a written statement. This complaint concerned a text exchange between Plaintiff and Defendant Rebecca Marcus that had occurred on November 9, 2019, more than a year earlier.

40. This statement also contains numerous falsities, including that she had asked Plaintiff to stop texting her when she had only asked Plaintiff to stop texting her "about this," meaning about Plaintiff's custody dispute. Plaintiff merely asked for pictures of her daughter, and Defendant Rebecca Marcus called Plaintiff "nuts" and told Plaintiff to "f—k off." Plaintiff defended herself by stating that she had only requested pictures of her daughter.

41. Defendant Rebecca Marcus also stated falsely in her statement that Plaintiff's texts caused her "alarm" and that Defendant Rebecca Marcus was supposedly "afraid for what [Plaintiff] might do."

42. The real reason that Defendants Maureen Marcus and Rebecca Marcus wanted Plaintiff arrested was the incident with Mr. Tangco at the daycare center earlier that day. Defendants Maureen and Rebecca Marcus wanted Plaintiff to suffer consequences for not instructing the daycare center to release her daughter to Mr. Tangco immediately.

43. Defendant Larocco took pictures of the text messages about which Defendant Maureen Marcus was complaining. Defendants Pav and Larocco both saw these texts. These texts showed on their face that Plaintiff had a legitimate purpose of communication, namely to speak with her daughter.

44. Defendants Pav and Larocco agreed to participate in this scheme to falsely arrest Plaintiff because Defendant Rebecca Marcus was an NYPD officer, and as fellow police officers, they wanted to perform a favor for her.

45. On information and belief, Defendant Suffolk County has a policy or custom of having its police officers grant requests from police officers from other jurisdictions.

46. In this case, even though the request to arrest Plaintiff falsely was illegal, it was still consistent with the policy or custom of Suffolk County to grant the request of Defendants Maureen and Rebecca Marcus to arrest Plaintiff.

47. Defendants Pav and Larocco agreed to arrest Plaintiff pursuant to Suffolk County policy of granting requests from police officers from other jurisdictions.

48. Defendant Pav prepared both written statements.

49. Defendants Pav and Larocco knew that the actual facts did not constitute probable cause to arrest Plaintiff.

50. Defendant Pav prepared the written statements in a way that was designed to suggest probable cause for Plaintiff's arrest, or at least to come as close to that as possible within the parameters of what Defendants Maureen and Rebecca Marcus were willing to swear to.

51. After their meeting with Defendants Maureen and Rebecca Marcus, Defendants Pav and Larocco went to Plaintiff's home to arrest her.

52. Defendants Pav and Larocco arrived at Plaintiff's home that night at approximately 11 pm.

53. When Plaintiff came to the door, Defendant Pav asked Plaintiff whether she knew why he and Defendant Larocco were there, and Plaintiff responded that she did not. Defendant Pav then accused Plaintiff of having harassed Defendant Maureen Marcus. Plaintiff denied any

such harassment. Plaintiff also informed the officers that if she had known that Defendant Maureen Marcus did not want to be contacted, Plaintiff would not have done so.

54. Plaintiff also explained to the officers that she only wanted to communicate with her daughter and that that was the purpose of all of her communications to Defendant Maureen Marcus that day.

55. As they continued to discuss the matter, Plaintiff stated that she believed that Defendant Rebecca Marcus must be involved in this matter. Defendant Pav falsely replied that she was not and that he had never heard of Defendant Rebecca Marcus.

56. After the conversation had continued for approximately one half-hour, Defendants Pav and Larocco arrested Plaintiff. But they did not tell her that they were arresting her or inform her of her *Miranda* rights. Rather, they told her that she was required to come with them. This was an arrest: she was not free to leave or to remain in her home or to otherwise terminate the encounter. She did not consent to travelling with them to the police station, but Defendants Pav and Larocco told her that she had no choice.

57. Indeed, Plaintiff asked whether she could be allowed to come to the police station in the morning. Defendants Pav and Larocco denied this request and reiterated that she was required to come with them immediately.

58. Moreover, Plaintiff was in her home the entire time. Defendants Pav and Larocco arrested Plaintiff in her home without an arrest warrant.

59. Plaintiff stated that she wanted to put clothes on before leaving her home. Defendants Pav and Larocco responded by insisting that they had to enter her home and remain inside while she did so. Plaintiff did not consent to their entry, but they came in anyway under the

9

pretense that they were required to even though they were not. This was all to effectuate the arrest of Plaintiff without an arrest warrant and without probable cause.

60. Defendants Pav and Larocco handcuffed Plaintiff, placed her in their car, and transported her to the police station in Babylon.

61. Ultimately, Plaintiff was taken to a local jail in Smithtown, where she was placed in a cell. At times, Plaintiff requested female sanitary products, which she urgently needed at the time, but the officers on duty refused her requests.

62. Plaintiff spent that night in lockup. Plaintiff was arraigned the next day at approximately 3 pm, at which time the court released her on her own recognizance.

63. As a result of spending the night in jail, Plaintiff lost one day of her freedom and suffered considerable emotional damage. Plaintiff has discussed her emotional trauma with a therapist.

64. Defendant Pav signed a criminal complaint charging Plaintiff with Second Degree Aggravated Harassment, a violation of Penal Law § 240.30(2), based solely on Plaintiff's texts to Defendant Maureen Marcus. The text exchange between Plaintiff and Defendant Rebecca Marcus in November 2019 were not part of the criminal complaint and played no part in the charges against Plaintiff.

65. In this criminal complaint, Defendant Pav falsely stated that Plaintiff had made the oral statement, "I only sent three texts three minutes after she told me not to contact her." In fact, Plaintiff had made no such statement ever. Defendant Pav invented this statement because he knew that he lacked probable cause for Plaintiff's arrest and he believed that such a statement, combined with the information in the written statements from Defendants Maureen and Rebecca Marcus, much of which were also false, would constitute probable cause for Plaintiff's arrest.

66. Also in that criminal complaint, Defendant Pav recited the requirement of Penal Law § 240.30(2) that the person must have intended to harass, annoy or threaten with no purpose of legitimate communication. Defendants Pav and Larocco had seen all of the texts between Plaintiff and Defendant Maureen Marcus, the texts on which the criminal complaint was based. On their face, these texts all plainly demonstrated that Plaintiff had a purpose of legitimate communication, namely Plaintiff's desire to speak with her daughter. Moreover, Defendants Pav and Larocco did not believe and could not have reasonably believed that Plaintiff had intended to harass, annoy, or threaten Defendants Maureen and Rebecca Marcus. They knew at the time that Plaintiff had this legitimate purpose of communication when she texted them.

67. The face of the texts from Plaintiff to Defendant Maureen Marcus also showed that Plaintiff was exercising her First Amendment rights by sending these texts.

68. Because charges had been filed against her, Plaintiff retained a criminal defense attorney. Plaintiff paid her criminal defense attorney $7500 for his services.

69. On or about September 7, 2021, all charges against Plaintiff were dismissed with prejudice.

70. The conduct of Defendants was so outrageous that punitive damages are warranted in this case.

**COUNT ONE**
42 U.S.C. § 1983 – Conspiracy (Against Defendants Pav, Larocco, Maureen Marcus, and Rebecca Marcus)

71. Plaintiff realleges paragraphs 1 through 70 as if same were fully set forth at length herein.

72. When Defendants Maureen Marcus, Rebecca Marcus, Pav, and Larocco met at the police station on or about January 20, 2021, they all agreed to use whatever tools were at their

11

disposal to arrest Plaintiff. This was illegal and unconstitutional because it deprived Plaintiff of her First and Fourth Amendment rights.

73. In furtherance of this conspiracy, under color of state law, these defendants prepared two false written statements.

74. Also in furtherance of this conspiracy, under color of state law, Defendants Pav and Larocco arrested Plaintiff.

75. Also in furtherance of this conspiracy, under color of state law, Defendant Pav prepared false court documents.

76. As a result of these illegal and unconstitutional acts, Plaintiff suffered the loss of her freedom, considerable emotional damage, and $7500 in economic damages.

**COUNT TWO**
42 U.S.C. § 1983 – Fourth Amendment (against Defendants Pav, Larocco, and Rebecca Marcus)

77. Plaintiff realleges paragraphs 1 through 76 as if same were fully set forth at length herein.

78. On or about January 20, 2021, under color of state law, Defendants Pav and Larocco arrested Plaintiff without probable cause.

79. Plaintiff was aware of the confinement. She spent that night in lockup and was not released until 3 pm the next day.

80. Plaintiff did not consent to being arrested. She never consented to going anywhere with Defendants Pav and Larocco.

81. Defendant Rebecca Marcus induced Defendants Pav and Larocco to falsely arrest Plaintiff by invoking her status as an NYPD officer. Defendant Rebecca Marcus used her position as an NYPD officer to cause these illegal events. She acted under color of state law at all times.

82. As a result of this false arrest, in violation of Plaintiff's First and Fourth Amendment rights, Plaintiff suffered considerable emotional damages, lost one day of her freedom, and suffered $7500 in economic damages.

## COUNT THREE
42 U.S.C. § 1983 – Fourth Amendment (against Defendants Pav and Larocco)

83. Plaintiff realleges paragraphs 1 through 82 as if same were fully set forth at length herein.

84. On January 20, 2021, under color of state law, Defendants Pav and Larocco arrested Plaintiff in her home without an arrest warrant.

85. The Fourth Amendment prohibits arresting anyone in his or her home without an arrest warrant.

86. No exigent circumstances existed that could have justified the police officers in entering Plaintiff's home.

87. By arresting Plaintiff in her home without an arrest warrant, Defendants Pav and Larocco violated Plaintiff's Fourth Amendment rights.

88. As a result of this false arrest, in violation of Plaintiff's Fourth Amendment rights, Plaintiff suffered considerable emotional damages, lost one day of her freedom, and suffered $7500 in economic damages.

## COUNT FOUR
Illegal Seizure – N.Y. Const. Art. I, § 12 (against Defendants Pav, Larocco, Rebecca Marcus, and Suffolk County)

89. Plaintiff realleges paragraphs 1 through 88 as if same were fully set forth at length herein.

90. On or about January 20, 2021, while acting within the scope of their employment with Suffolk County as police officers, Defendants Pav and Larocco arrested Plaintiff without probable cause.

91. Arresting Plaintiff constituted an illegal seizure under the New York State Constitution, Art. I, § 12.

92. Defendant Rebecca Marcus induced Defendants Pav and Larocco to falsely arrest Plaintiff by invoking her status as an NYPD officer. Defendant Rebecca Marcus used her position as an NYPD officer to cause these illegal events.

93. As a result of her arrest, Plaintiff suffered considerable emotional damages, lost one day of her freedom, and suffered $7500 in economic damages.

## COUNT FIVE
42 U.S.C. § 1983 – First Amendment (Against Defendants Pav, Larocco, and Rebecca Marcus)

94. Plaintiff realleges paragraphs 1 through 93 as if same were fully set forth at length herein.

95. When Plaintiff sent the texts in question to Defendant Maureen Marcus, she was exercising her First Amendment rights.

96. By arresting Plaintiff for exercising her First Amendment rights, Defendants Pav and Larocco deprived Plaintiff of her First Amendment rights.

97. Defendant Rebecca Marcus induced Defendants Pav and Larocco to falsely arrest Plaintiff by invoking her status as an NYPD officer. Defendant Rebecca Marcus used her position as an NYPD officer to cause these illegal events. She acted under color of state law at all times.

98. As a result of her arrest, Plaintiff suffered considerable emotional damages, lost one day of her freedom, and suffered $7500 in economic damages.

## COUNT SIX
42 U.S.C. § 1983 – First and Fourth Amendments (against Defendant Suffolk County)

99. Plaintiff realleges paragraphs 1 through 98 as if same were fully set forth at length herein.

100. On information and belief, Defendant Suffolk County has a policy or custom of having its police officers honor requests from police officers of other jurisdictions.

101. Pursuant to that policy or custom, Defendants Pav and Larocco arrested Plaintiff at the request of Defendant Rebecca Marcus.

102. Even though the request was illegal and unconstitutional, the decision to honor Defendant Rebecca Marcus's request was consistent with Defendant Suffolk County's policy or custom.

103. This arrest violated Plaintiff's First and Fourth Amendment rights.

104. As a result of these illegal and unconstitutional acts, Plaintiff suffered the loss of her freedom, considerable emotional damage, and $7500 in economic damages.

## COUNT SEVEN
False arrest/false imprisonment (against Defendants Pav, Larocco, Rebecca Marcus, and Suffolk County)

105. Plaintiff realleges paragraphs 1 through 104 as if same were fully set forth at length herein.

106. On or about January 20, 2021, acting within the scope of their employment as police officers, Defendants Pav and Larocco arrested Plaintiff without probable cause.

107. Plaintiff was aware of the confinement. She spent that night in lockup and was not released until 3 pm the next day.

108. Plaintiff did not consent to being arrested. She never consented to going anywhere with Defendants Pav and Larocco.

15

109. Defendant Rebecca Marcus induced Defendants Pav and Larocco to falsely arrest Plaintiff by invoking her status as an NYPD officer. Defendant Rebecca Marcus used her position as an NYPD officer to cause these illegal events.

110. As a result of this false arrest, Plaintiff suffered considerable emotional damages, lost one day of her freedom, and suffered $7500 in economic damages.

## COUNT EIGHT
Malicious Prosecution (against Defendants Pav, Maureen Marcus, Rebecca Marcus, and Suffolk County)

111. Plaintiff realleges paragraphs 1 through 110 as if same were fully set forth at length herein.

112. By signing written statements against Plaintiff, Defendants Maureen Marcus and Rebecca Marcus falsely initiated criminal proceedings against Plaintiff.

113. By drafting said written statements and by completing a criminal complaint against Plaintiff, Defendant Pav falsely initiated criminal proceedings against Plaintiff. He did so while acting within the scope of his employment with Suffolk County as a police officer.

114. All of these statements were false. Defendants had no probable cause to initiate any criminal proceedings against Plaintiff.

115. All of the criminal charges against Plaintiff were dismissed with prejudice on September 7, 2021.

116. Defendants Maureen and Rebecca Marcus initiated criminal proceedings against Plaintiff not because of any fear of Plaintiff or any concern about potential harassment, but rather to punish Plaintiff for her decision not to authorize her daughter's daycare center to release her daughter 3½ hours early to their friend, Christopher Tango.

117. Defendant Pav went along with this scheme because Defendant Maureen Marcus, an NYPD officer, asked him to do so.

16

118. As a result of this illegal and malicious prosecution, Plaintiff suffered the loss of her freedom for one day, considerable emotional damage, and $7500 in economic damages.

## COUNT NINE
Intentional Infliction of Emotional Distress (against all Defendants)

119. Plaintiff realleges paragraphs 1 through 118 as if same were fully set forth at length herein.

120. Defendants Maureen Marcus and Rebecca Marcus filed false complaints maliciously for the purpose of having Plaintiff arrested and making her spend a night in jail. They did so in order to cause Plaintiff extreme emotional distress.

121. Defendants Pav and Larocco, at the request of NYPD Officer Rebecca Marcus, arrested Plaintiff at 11 pm without probable cause for the purpose of making her spend a night in jail so that she would suffer extreme emotional distress.

122. Defendants Pav and Larocco committed these acts within the scope of their employment as Suffolk County police officers.

123. This conduct was so extreme and outrageous as to go beyond the bounds of human decency.

124. As a result of being arrested and spending a night in jail, Plaintiff suffered extreme emotional distress. Plaintiff has received psychiatric treatment for this emotional distress.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests that the Court grant the following relief:

A. Award compensatory damages in the amount of $7500 for Plaintiff's economic damages;

B. Award compensatory damages in an amount to be determined at trial for Plaintiff's emotional damages;

17

    C.    Award punitive damages because Defendants' conduct is so outrageous that punitive damages are warranted;

    D.    Award reasonable attorneys' fees, together with the cost of this action;

    E.    Grant such other relief as the Court may deem appropriate.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands trial by jury in this action.

Dated: December 16, 2021
       New York, New York

                              Respectfully submitted,

                              /s/ Joshua Pepper
                              Joshua Pepper
                              30 Wall Street, 8th floor
                              New York, New York 10005
                              212-804-5768
                              jpepper@jpepperesq.com