UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------X

MAUREEN KEENAN,

                    Plaintiff,              MEMORANDUM & ORDER
                                            21-CV-6928 (JS)(JMW)
        -against-

MARK PAV, CHRISTOPHER LAROCCO,
REBECCA MARCUS, MAUREEN MARCUS,
and COUNTY OF SUFFOLK,

                    Defendants.

--------------------------------X

APPEARANCES

For Plaintiff:          Joshua B. Pepper, Esq.
                        Law Office of Joshua Pepper, PLLC
                        30 Wall Street, 8th Floor
                        New York, New York 10005


For Defendants Mark     Stacy A. Skorupa, Esq.
Pav, Christopher        Suffolk County Department of Law
LaRocco, and County     H. Lee Dennison Building
of Suffolk:             100 Veterans Memorial Highway
                        Hauppauge, New York 11788


For Defendants          Christopher P. Ring, Esq.
Rebecca Marcus and      Law Office of Christopher P. Ring
Maureen Marcus:         737 Smithtown Bypass
                        Smithtown, New York 11787

                        David Antwork, Esq.
                        1757 Merrick Avenue, Suite 205
                        Merrick, New York 11566


SEYBERT, District Judge:

        On December 16, 2021, Plaintiff Maureen Keenan
("Plaintiff") filed this 42 U.S.C. § 1983 ("§ 1983" or "Section
1983") action against Defendants Mark Pav ("Pav"), Christopher
Larocco ("Larocco"), and the County of Suffolk ("Suffolk County"),

(collectively, the "Suffolk County Defendants"), as well as Rebecca Marcus, ("R. Marcus") and Maureen Marcus ("M. Marcus") (collectively, the "Marcus Defendants", and together with the Suffolk County Defendants, "Defendants").[1]  Plaintiff alleges Defendants violated her First and Fourteenth Amendment rights based upon her purported false arrest and malicious prosecution. (See generally Am. Compl., ECF No. 11.)  Plaintiff further alleges Defendants' conduct violated several New York state laws.  (Id.) Presently before the Court are the parties' cross-motions for summary judgment, filed pursuant to Federal Rule of Civil Procedure ("Rule") 56. (See Pl.'s Mot., ECF No. 43; Pl.'s Support Memo, ECF No. 44; County Defs'. Mot., ECF No. 48; County Defs' Support Memo, ECF No. 48-2; Marcus Defs' Mot., ECF No. 49; Marcus Defs' Support Memo, ECF No. 49-6.)  For the reasons that follow, the parties' cross-motions are GRANTED IN PART AND DENIED IN PART.

---

[1] For the avoidance of doubt, a reference to the "Suffolk County Defendants" is a reference to Pav, Larocco, and the County of Suffolk.  A reference to the "Marcus Defendants" is a reference to R. Marcus and M. Marcus.  A reference to "Defendants" is a reference to both the Suffolk County defendants and the Marcus Defendants.  A reference to the "parties" is a reference to Plaintiff and Defendants.

BACKGROUND[2]

## I. The Parties

Plaintiff and non-party Christopher Tangco ("Tangco") have a child together who is approximately seven years old

---

[2] The following facts are taken from the parties' respective Local Rule 56.1 Statements (Pl.'s 56.1 Stmt, ECF No. 47; Suffolk County Defs.' 56.1 Counterstmt., ECF No. 48-18; Marcus Defs.' 56.1 Counterstmt., ECF No. 49-5), the parties' respective replies and responses to such 56.1 Statements, and the declarations and exhibits submitted relative to the instant Motions. (See ECF Nos. 45-46, 48-49, 51-53, 55, 58.)

Unless otherwise noted, a standalone citation to a party's Rule 56.1 statement throughout this Order means the Court has deemed the underlying factual assertion undisputed. Any citation to a Rule 56.1 statement incorporates by reference the documents cited within. Where relevant, however, the Court may also cite directly to an underlying document. The Court has deemed true undisputed facts averred in a party's Rule 56.1 statement to which the opposing party cites no admissible evidence in rebuttal. See Steward v. Fashion Inst. of Tech., No. 18-CV-12297, 2020 WL 6712267, at *8 (S.D.N.Y. Nov. 16, 2020) ("[P]ursuant to Local Civil Rule 56.1 [the movant's] statements are deemed to be admitted where [the non-moving party] has failed to specifically controvert them with citations to the record." (quoting Knight v. N.Y.C. Hous. Auth., No. 03-CV-2746, 2007 WL 313435, at *1 (S.D.N.Y. Feb. 2, 2007))); Lumbermens Mut. Cas. Co. v. Dinow, No. 06-CV-3881, 2012 WL 4498827, at *2 n.2 (E.D.N.Y. Sept. 28, 2012) ("Local Rule 56.1 requires . . . that disputed facts be specifically controverted by admissible evidence. Mere denial of an opposing party's statement or denial by general reference to an exhibit or affidavit does not specifically controvert anything."). "Additionally, to the extent [a party's] 56.1 statement 'improperly interjects arguments and/or immaterial facts in response to facts asserted by [the opposing party] without specifically controverting those facts,' the Court has disregarded [such] statement[s]." McFarlane v. Harry's Nurses Registry, No. 17-CV-6360, 2020 WL 1643781, at *1 n.1 (E.D.N.Y. Apr. 2, 2020).

(hereafter, "daughter"[3]).   (Pl.'s 56.1 Stmt. ¶¶1-2; see also M. Marcus Dep. 11/18/22, ECF No. 46-4, at 15:4-10.)   Plaintiff and Tangco previously had a romantic relationship that Plaintiff ended in 2015, prior to the birth of their child.   (Pl.'s 56.1 Stmt. ¶2.)   Since then, Plaintiff and Tangco have engaged in bitter disputes concerning child custody.   (Id. at ¶3.)   Plaintiff believes Tangco has repeatedly tried to undermine her relationship with her daughter.   (Id. ¶4.)

Defendant M. Marcus is Plaintiff's aunt.   (M. Marcus Dep. 11/18/22, at 14:19-15:10.)   Defendant R. Marcus is M. Marcus' daughter and Plaintiff's cousin.   (M. Marcus Dep. 11/18/22, at 9:21-25).   R. Marcus was an NYPD police officer from January 11, 2005 to January 2022.   (Marcus Defs.' 56.1 Stmt. ¶1.)   Defendants Pav and LaRocco (hereafter, "Officer Pav" "Officer LaRocco" and collectively, "Officers") are police officers in Suffolk County's First Precinct.   (Suffolk County 56.1 Stmt. ¶¶23-25)

II.   Relevant Facts and Events Occurring Prior to Plaintiff's Arrest

At all relevant times, Plaintiff and Tangco shared custody of their daughter such that Tangco was permitted to see their daughter during agreed-upon visitation weekends.   (Pl.'s

---

[3] The Court may, at times, refer to Plaintiff and Tangco's daughter as either "Plaintiff's daughter" or "Tangco's daughter" or "their daughter."   Each of these references shall refer to the daughter Plaintiff and Tangco share together.

56.1 Stmt. ¶¶7, 10.)   During his visitation weekends, Tangco at least occasionally took his daughter to spend the weekend at M. Marcus' house.   (Id. at ¶7; Marcus Defs.' 56.1 Counterstmt. ¶7.) Plaintiff understood that Tangco was obligated to inform Plaintiff of their daughter's whereabouts during visitation weekends. (Keenan Dep. Tr., ECF No. 46-1, at 190:19-191:25; see also Keenan Decl. Ex. 2, ECF No. 45-2 (family court order).)   Additionally, pursuant to a family court order, both parents were to "ensure that [their daughter] call or Facetime the other parent one time per day at 7:20pm (for no more than 20 minutes) when she is with the parent for the weekend or other extended parenting time." (Keenan Decl. Ex. 2.)   Furthermore, "[their daughter] shall be permitted to call either parent whenever she desires."   (Id.) Tangco sometimes waited until the last minute to inform Plaintiff of his intention to take their daughter to visit M. Marcus during visitation weekends.   (Pl 56.1 Stmt ¶9.)

> a. Plaintiff's Contact with R. Marcus in November 2019

In November 2019 during Tangco's visitation time with his daughter, Tangco took her out to dinner at a restaurant with the Marcus Defendants to celebrate M. Marcus' Birthday.   (R. Marcus Dep. Tr. 1/4/23, ECF No. 46-2, at 26:14-16.)   During said dinner, Plaintiff texted R. Marcus asking for pictures of her daughter. (Id. 26:17-19.)   While the conversation initially began with the exchange of pleasantries, during the text exchange, Plaintiff

received a call from her parents indicating she should stop texting R. Marcus. (Pepper Decl. Ex. 13, ECF No. 46-13.) Plaintiff told R. Marcus, via text message, that she received such call from her parents and indicated that she was "done" texting R. Marcus. (Id.) However, the communication continued, with both Plaintiff and R. Marcus texting back and forth. (Id.) The exchange ended with R. Marcus texting Plaintiff "Fuck off. Seriously, I'm telling you to stop. And I am going to block you [because] you're nuts." (Id.) Plaintiff and R. Marcus have not communicated since that interaction. (R. Marcus Dep. Tr. 1/4/23 at 104:3-10) (R. Marcus confirming she has not received any communication of any kind from Plaintiff since November 9, 2019).

  b. Plaintiff's Contact with M. Marcus in January 2021

The weekend of January 15, 2021 through January 18, 2021 was one of Tangco's visitation weekends. (Pl.'s 56.1 Stmt. ¶10.) During that weekend, Tangco took his daughter to spend time at M. Marcus's house. (Id.) On the evening of January 16, 2021, Plaintiff attempted to speak with her daughter via phone; however, there was noise in the background which limited the time they were able to speak. (Id. at ¶11.) The following morning, on January 17, 2021, Plaintiff called Tangco's phone in an attempt to speak with her daughter. (Id. ¶12; Suffolk 56.1 Stmt. ¶12.) Tangco did not pick up the phone. (Pl.'s 56.1 Stmt. ¶12.) Plaintiff then sent a text message to Tangco stating she was "[t]rying to get

6

through to say good morning to [their daughter]" and then asked whether [their daughter] was okay. (Keenan Decl. Ex. 1, ECF No. 45-1.)  Tangco responded stating their daughter was "good," "[didn't] want to facetime this morning" and noted they were "only allowed to facetime once a day unless [their daughter] calls and [he and Plaintiff] should stick to the [family court] order." (Id.)

Plaintiff then sent a series of messages to Tangco requesting he allow their daughter to call her.  (Id.)  Tangco responded stating "[their daughter] had already expressed her desire not to facetime today and [Plaintiff's] aunt [M. Marcus] can attest to that" he then asked Plaintiff to "[p]lease stop it with [her] demands."  (Id.)  Tangco further stated that Plaintiff would be able to facetime their daughter that evening.  (Id.)  Following these statements, Plaintiff continued sending text messages to Tangco, including one in which she stated she would be "filing a [family court] violation" regarding the incident.  (Id.)

Plaintiff further reached out repeatedly to M. Marcus attempting to make contact with her daughter on the morning of January 17, 2021.  Plaintiff texted M. Marcus several times in a group chat with Plaintiff's father. (Pepper Decl. Ex. 11, ECF No. 46-11.)  Plaintiff also called M. Marcus at least once at 9:40 A.M., twice at 9:41 A.M., once at 9:43 A.M., once at 9:46 A.M., 9:47 A.M., 9:48 A.M., 10:02 A.M., 10:04 A.M., 10:16 A.M., 10:17

A.M., 10:25 A.M., twice at 10:27 A.M., once at 10:35 A.M., twice at 12:01 P.M., once at 12:03 P.M., and twice at 12:04 P.M. (Marcus Defs.' 56.1 Stmt. at ¶¶5-6; Pl.'s 56.1 Counterstmt., ECF No. 55, ¶¶5-6.)  Plaintiff then called M. Marcus nine more times at 1:44 P.M.  (Marcus Defs.' 56.1 Stmt. ¶7.)  Many of these calls resulted in voicemails; Plaintiff left M. Marcus at least seven voicemails of various lengths ranging from 21 seconds to 47 seconds. (Id. ¶8.)  While the Marcus Defendants claim the voicemails were threatening, (see id. ¶9), Plaintiff denies they were (see Pl.'s 56.1 Counterstmt. at ¶9), and the Marcus Defendants claim no recordings of the voicemails exist.  (Pepper Supp. Decl. Ex. 17, ECF No. 52-2.)

   c. The Marcus Defendants File a Police Report

On January 21, 2021,[4] the Marcus Defendants went to the Suffolk County Police Department's First Precinct to make a report against Plaintiff.  (Marcus Defs.' 56.1 Stmt. ¶27.)  Upon arrival at the precinct, the Marcus Defendants spoke with Officer Pav and

---

[4] It bears noting the Marcus Defendants contacted the police on January 21, 2021 notwithstanding the fact that the complained-of conduct occurred, in M. Marcus' case, four days prior, and in R. Marcus' case, over a year prior.  (See supra Background II.a-b.) The same day the Marcus Defendants contacted the police, there was an incident at Plaintiff and Tangco's daughter's day care center. (Keenan Dep. Tr. at 152:17-153:18.)  Tangco, who was scheduled to pick their daughter up from daycare at 3:30[p.m.], arrived early to pick her up.  (Id.)  The daycare called Plaintiff and asked if their daughter could be released to Tangco prior to the scheduled release time; Plaintiff said no.  (Id.)  The daycare then called the police on Tangco and filed a report.  (Id.)

told him they wanted to report a domestic incident. (Pl.'s 56.1 ¶ 27.) The Marcus Defendants then proceeded to an interview room with Officer Pav, gave statements, and showed him the text exchanges they had with Plaintiff, both from 2019 and 2021. (Id. at ¶¶28-30.) The statements generated by Officer Pav on behalf of the Marcus Defendants included the entirety of the information provided to the precinct. (Id. ¶34; County Defs.' 56.1 Counterstmt. ¶34; Marcus Defs.' 56.1 Counterstmt. ¶34.)[5]

The Marcus Defendants explicitly requested the police arrest Plaintiff. (R. Marcus Dep. Tr. 1/4/23 at 134:11-18; see also R. Marcus Police Statement, ECF No. 46-15, at 5 (R. Marcus stating, based upon the November 2019 incident and her observation of the interactions between Plaintiff and M. Marcus, "I do want Maureen Keenan 2/18/1975 arrested for continuing to text me after I told her to stop"); M. Marcus Police Statement, ECF No. 46-14, at 5 (M. Marcus stating, based upon the January 17, 2021 Incident,

---

[5] While the Marcus Defendants attempt to create an issue of fact as to whether their police statements constituted the entirety of what was reported to the police based upon M. Marcus' testimony that she "[can not] recall" whether she told Officer Pav anything else, such lack of memory does not create a genuine dispute of material fact in accordance with Rule 56 of the Federal Rules of Civil Procedure. See F.D.I.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 205 F.3d 66, 75 (2d Cir. 2000) ("[V]ague denials and memory lapses[] do not create genuine issues of material fact"); see also Maioriello v. N.Y.S. Off. for People With Developmental Disabilities, 272 F. Supp. 3d 307, 334 (N.D.N.Y. 2017) (collecting cases supporting same).

"I do want Maureen Keenan 2/18/75 arrested for continuing to text and call me regarding the visitation situation . . . . I am afraid Maureen is going to end up at my house and causing a scene"). At the conclusion of the Marcus Defendants' meeting with officers in the First Precinct, R. Marcus identified herself as a police officer. (Marcus Defs.' 56.1 Counterstmt. ¶38.) Officer Pav told the Marcus Defendants he would arrest Plaintiff. (Id. ¶39.)

III.   Plaintiff's January 20, 2021 Arrest

Sometime after the Marcus Defendants left the police station, Officer Pav asked Officer LaRocco to accompany him to affect Plaintiff's arrest. (Pl.'s 56.1 ¶40.) Officer Pav did not obtain an arrest warrant for Plaintiff. (Id. ¶43.) Officers Pav and LoRocco arrived at Plaintiff's house on January 20, 2021 at 11:07 P.M. (Id. ¶¶42,44.) As soon as the Officers made contact with Plaintiff in her home, she was placed under arrest. (Id. ¶45.) Plaintiff had a five-to-ten-minute conversation with the Officers; Plaintiff was told that she had to go with the Officers to the police station and that she was allowed to change out of her pajamas on the condition that the Officers were permitted to come inside of her home. (Id. ¶¶47-49.) Once Plaintiff was dressed, she was escorted out of her home by the Officers, handcuffed, placed into a police car, and driven to the police station. (Id. ¶52.)

Plaintiff spent the night of January 20, 2021 and the morning of January 21, 2021 in jail.  (Id. ¶53.)  On the afternoon of January 21, 2021, Plaintiff was released on her own recognizance.  (Id. ¶54.)  All charges against Plaintiff were eventually dismissed.  (Id. ¶55.)

ANALYSIS

I.  Legal Standards

A. Summary Judgment

The Court shall grant summary judgment under Rule 56(a) when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A fact is material for the purposes of resolving a summary judgment motion "when it might affect the outcome of the suit under the governing law." Adamson v. Miller, 808 F. App'x 14, 16 (2d Cir. 2020).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. (quoting Jeffreys v. City of N.Y., 426 F.3d 549, 553 (2d Cir. 2005)).

"The movant bears the burden of 'demonstrating the absence of a genuine issue of material fact.'" Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 114 (2d Cir. 2017) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The burden of persuasion may be satisfied by either: (1) submitting evidence that negates an essential element of the non-moving

party's claim; or (2) by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim. Id. Once the moving party has met its burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to material facts and instead offer some hard evidence showing that its version of events is not wholly fanciful." Stein v. County of Nassau, 417 F. Supp. 3d 191, 197 (E.D.N.Y. 2019) (citations omitted).

"Summary judgment is inappropriate when the admissible materials in the record make it arguable that the claim has merit." Kaytor v. Elec. Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010) (citations and quotation marks omitted). In reviewing the record, the Court "may not make credibility determinations or weigh the evidence" as such determinations are to be made by the jury, not the judge. Id. (citing Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 150 (2000)). Accordingly, where an issue as to a material fact cannot be resolved without weighing the credibility of a witness, summary judgment is improper. Id.

II. Discussion

A. Whether the Marcus Defendants Acted Under Color of Law in Accordance with 42 U.S.C. § 1983

Counts One, Two, Five, and Six, allege one or more of the Marcus Defendants violated 42 U.S.C. § 1983. (See generally, Am. Compl.) In particular, Plaintiff alleges R. Marcus violated

Section 1983 by: (1) engaging in a conspiracy to unlawfully arrest and detain Plaintiff (Count One); (2) violating Plaintiff's Fourth Amendment Rights (Count Two); (3) violating Plaintiff's First Amendment Rights (Count Five); and (4) engaging in malicious prosecution (Count Six).  (Id.)  Plaintiff alleges M. Marcus is also liable for engaging in said conspiracy (Count One) and malicious prosecution (Count Six).  For the reasons discussed infra, there is a genuine dispute of material fact as to whether R. Marcus, an off-duty police officer, was acting "under color of law" at the time the events in question occurred.  Conversely, there is no dispute of material fact as to whether M. Marcus, a purely private citizen, was acting under color of law when the events in question occurred; she clearly was not.  Accordingly, the Marcus Defendants' Motion for Summary Judgment as to Counts One, Two, Five, and Six against R. Marcus is DENIED.  The Marcus Defendants' Motion for Summary Judgment as to Counts One and Six against M. Marcus is GRANTED.

> In order to maintain a section 1983 action, two essential elements must be present: (1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.

Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994).  "Under color of law" means under the "pretense" of law; therefore, acts

committed by police officers that are "personal pursuits" are "plainly excluded." Id. There is no bright-line test for determining whether a police officer's act is a "personal pursuit" as opposed to an action made under color of law. Claudio v. Sawyer, 675 F. Supp. 2d 403, 408 (S.D.N.Y. 2009), aff'd, 409 F. App'x 464 (2d Cir. 2011). Rather, courts consider the "totality of circumstances surrounding the officer's acts, with attention to the nature of the officer's acts (rather than simply the officer's duty status)", as well as the "relationship of that conduct to the officer's official duties." Id. (citing Lizardo v. Denny's, Inc., No. 97-CV-1234, 2000 WL 976808, at *9 (N.D.N.Y. July 13, 2000) (further citations omitted)). The core consideration is whether the officer "albeit off-duty nonetheless invoke[ed] the real or apparent power of the police department" or "perform[ed] duties prescribed generally for police officers." Id.

> Factors courts consider when determining whether an off-duty police officer acted under color of law include "whether defendants identified themselves as police officers at any time during the incident; if plaintiff was aware that the defendants were police officers; whether defendants detained or questioned the plaintiff in the line of duty or scope of employment as police officers; if defendants drew a firearm or arrested the plaintiff; [and] whether defendants were engaged in any investigation or any aspect of the traditional public safety functions of police work."

14

Moroughan v. County of Suffolk, 514 F. Supp. 3d 479, 512 (E.D.N.Y. 2021) (citing Claudio v. Sawyer, 675 F. Supp. 2d 403, 408 (S.D.N.Y. 2009) aff'd, 409 F. App'x 464 (2d Cir. 2011)).

       1. There is a Dispute of Fact as to Whether R. Marcus Acted Under Color of Law in Accordance with 42 U.S.C. § 1983

Here, it is undisputed that as of January 21, 2021, the date the Marcus Defendants filed their police report, R. Marcus was a police officer with the NYPD. (Pl.'s 56.1 Counterstmt. Re: Marcus Defs., ECF No. 55, at ¶1.) It is also undisputed that R. Marcus identified herself as a police officer either at the "tail end" of her conversation with Officer Pav, (see Pav Dep. Tr., ECF No. 48-5, at 23:12-19), or after the report was submitted and she requested that Plaintiff be arrested. (Pl.'s 56.1 Counterstmt. Re: Marcus Defs. at ¶30; R. Marcus Police Statement at 5.) Plaintiff argues there is a genuine dispute of material fact concerning whether R. Marcus acted under color of law based upon these facts and because there is a common "custom" of police officers providing each other with "special treatment."[6] (Pl.'s Reply to Marcus Defs., ECF No. 54, at 8-9.) While the Court

_____

[6] The Court notes Plaintiff makes several references to police officers' general use of Police Benevolent Association ("PBA") cards, notwithstanding there is no allegation a PBA card was possessed or used by any of the parties to this case. (See, e.g., Pl.'s 56.1 Counterstmt. Re: Marcus Defs. at ¶¶69-70.) The Court therefore declines to engage in any analysis of hypothetical situations where PBA cards are presented to police officers in exchange for presumed special treatment.

recognizes it will likely be difficult for Plaintiff to prove R. Marcus acted under color of law during the events in question, the Court nonetheless finds, upon the record presented, there is enough of a dispute of material facts to preclude summary judgment and warrant presenting the facts to a jury for its determination.

The Court acknowledges the facts of this case are far from those where off-duty officers were found to be acting under color of law. See, e.g., Jocks v. Tavernier, 316 F.3d 128 (2d Cir. 2003) (finding there was "no doubt" that an off-duty police officer who displayed his shield, identified himself as a police officer to an arrestee, and drew his firearm, was acting "under color of law" in accordance with Section 1983); see also Moroughan v. County of Suffolk, 514 F. Supp. 3d 479 (E.D.N.Y. 2021) (finding triable issues of fact as to whether an off-duty police officer acted under color of law where he identified himself as a police officer, flashed his shield, and, together with another off-duty officer, arrested plaintiff). However, the facts of this case are distinguishable because there is evidence that R. Marcus made some showing of her police officer status in connection with her reporting of the alleged crime by Plaintiff. In particular, at some point in her conversation with Officer Pav, R. Marcus identified herself as a police officer and specifically requested that Plaintiff be arrested. (Marcus Defs' 56.1 Counterstmt. ¶38; R. Marcus Dep. Tr. 1/4/23 at 134:11-18; see also R. Marcus Police

16

Statement at 5.)  Officer Pav then agreed to arrest Plaintiff and told the Marcus Defendants he would do so.  (Marcus Defs.' 56.1 Counterstmt. ¶39.)

While the Marcus Defendants argue that R. Marcus was merely acting as a private citizen while "furnishing information to police" (see Marcus Defs' Support Memo at 20), and such information resulted in the "officers' independent probable cause determination to arrest Plaintiff" (see id. at 21), upon the summary judgment record, the Court cannot draw such conclusion as a matter of law.  Indeed, unlike other cases in this Circuit where courts have found off-duty officers, acting solely "in [their] capacity as a victim," and who "did not ask the officers to arrest or the authorities to prosecute", were not acting under color of law, the instant case is different because R. Marcus did specifically request Officer Pav arrest Plaintiff.  See Savarese v. City of N.Y., 547 F. Supp. 3d 305, 339 (S.D.N.Y. 2021) ("It is significant that it is undisputed that [defendant] did not ask the officers to arrest or the authorities to prosecute. There is no evidence he invoked his governmental status to invade the officers' decision whether or not to arrest and whose version of events to believe. He left that to the officers. It also is significant that [defendant] is not himself a peace officer with authority to arrest based upon probable cause."); see also Fiedler v. Incandela, 222 F. Supp. 3d 141, 159 (E.D.N.Y. 2016) (finding an off-duty officer

17

who merely called the Suffolk County Police Department to report a crime, did not identify himself as a police officer, and did not request the alleged perpetrators be arrested, was not acting under color of law pursuant to Section 1983). Here, in light of the facts that R. Marcus identified herself as a police officer to Officer Pav, specifically requested Officer Pav arrest Plaintiff, and thereafter Officer Pav promised to, and did, arrest Plaintiff, the Court cannot conclude as a matter of law that R. Marcus was not "invoking the real or apparent power of the police department" or "performing duties prescribed generally for police officers" when she discussed the alleged crime with Officer Pav. Claudio, 675 F. Supp. 2d at 408. While it may be that R. Marcus' actions fall short of invoking the power of the police department, that is currently a material fact in dispute; therefore, such decision is to be made by the jury. Accordingly, the Marcus Defendants' Motion for Summary Judgment as to Counts One, Two, Five, and Six against R. Marcus is DENIED.

2. There is No Dispute of Fact as to Whether M. Marcus Acted Under Color of Law in Accordance with 42 U.S.C. § 1983

Unlike R. Marcus, an off-duty police officer who may have been acting under color of law when reporting the alleged crime to police, there is no theory by which Plaintiff can maintain a Section 1983 action against M. Marcus, who is undoubtably a

private citizen and not a police officer.  A private citizen may be held liable as a state actor for the purposes of Section 1983 only when she "acts jointly with a state actor" such that she "somehow reached an understanding" with said state actor to violate the Plaintiff's civil rights.  Fisk v. Letterman, 401 F. Supp. 2d 362, 376 (S.D.N.Y. 2005).  The record is entirely devoid of any such evidence here.

Moreover, even if Plaintiff's allegations that M. Marcus falsely reported a crime to the police were true, Section 1983 claims are not the appropriate channel by which Plaintiff can seek relief against M. Marcus.  Vazquez v. Combs, No. 04-CV-4189, 2004 WL 2404224, at *4 (S.D.N.Y. Oct. 22, 2004) ("[M]erely filing a complaint with the police, reporting a crime, requesting criminal investigation of a person, or seeking a restraining order, even if the complaint or report is deliberately false, does not give rise to a claim against the complainant for a civil rights violation."); see also Baez v. JetBlue Airways, 745 F. Supp. 2d 214, 221 (E.D.N.Y. 2010) ("[P]roviding false information to the police does not make a private individual . . . a state actor and liable under § 1983.").  The Court presumes Plaintiff concedes this point, as she does not respond to the Marcus Defendants' argument in their Motion for Summary Judgment that M. Marcus is a private citizen who cannot be said to have acted under "color of law" such that she is subject to liability under § 1983.  (Compare Marcus Defs.'

Support Memo at 14, <u>with</u>, Pl.'s Reply Re: Marcus Defs, ECF No. 8, <u>in toto</u>); <u>see</u> <u>Butler v. Suffolk County</u>, No. 11-CV-2602, 2023 WL 5096218, at *29 N.34 (E.D.N.Y. Aug. 9, 2023) (deeming plaintiff's claim unopposed where defendant "[did] not raise[] any opposition arguments" regarding such claim).    Accordingly, the Marcus Defendants' Motion for Summary Judgment as to Counts One and Six against M. Marcus is GRANTED.

B. <u>42 U.S.C. § 1983 and New York State Law Claims Against the Defendants</u>

Having determined there is a dispute of fact as to whether R. Marcus acted under color of law when reporting the alleged crime to Officer Pav, and requesting Officer Pav arrest Plaintiff, the Court now turns to the Section 1983 and New York State Law claims against the Defendants.    Plaintiff alleges Pav, LaRocco, and R. Marcus: (1) engaged in a conspiracy to arrest Plaintiff (Count One);[7] and (2) infringed upon Plaintiff's Fourth Amendment rights by arresting Plaintiff without probable cause (Count Two) and (3) infringed upon Plaintiff's First Amendment rights by arresting Plaintiff for protected speech (Count Five); all in violation of Section 1983.    (<u>See</u> Am. Compl. at 11-14.) Plaintiff also maintains Pav and R. Marcus maliciously prosecuted

---

[7] In Plaintiffs' Reply in Opposition to the County Defendants' Motion for Summary Judgment, Plaintiff "drop[ped]" her conspiracy claim against LaRocco.  (Pl.'s Reply Re: Suffolk County Defs. at 20 n.7.)  That claim is therefore deemed withdrawn as to LaRocco.

her in violation of Section 1983 (Count Six). (Id. at 15.)
Plaintiff further alleges that Pav and LaRocco violated
Plaintiff's Fourth Amendment Rights pursuant to 42 U.S.C. § 1983
by arresting Plaintiff in her home without a warrant (Count Three).
(Id. at 13.)  In addition, Plaintiff raises several New York State
law claims against Pav, LaRocco, R. Marcus, and Suffolk County for
illegal seizure (Count Four), False Arrest (Count Eight), and
Malicious Prosecution (Count Nine).[8]  (Id. at 13-14, 16-17.)  The
Court addresses each of these claims, out of turn, below.

### 1. False Arrest Pursuant to 42 U.S.C. § 1983 (Count Two) and New York State Law (Counts Four and Eight)

> Claims for false arrest or malicious
> prosecution, brought under § 1983 to vindicate
> the Fourth and Fourteenth Amendment right to
> be free from unreasonable seizures, are
> "substantially the same" as claims for false
> arrest or malicious prosecution under state
> law.

Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003).  The parties
agree, to prevail on a claim of false arrest under New York State
law, Plaintiff must show: "(1) the defendant intended to confine
him, (2) the plaintiff was conscious of the confinement, (3) the
plaintiff did not consent to the confinement and (4) the
confinement was not otherwise privileged." Id. at 134-35; (see

---

[8] The Court notes that Count Nine is not brought against Officer
LaRocco, but is brought against M. Marcus.  (See Am. Compl. at
17.)

also Pl.'s Support Memo at 14; Marcus Defs' Support Memo at 23; County Defs' Support Memo at 15.)

   a. There is a Dispute of Fact as to Whether Plaintiff Was Falsely Arrested Based Upon a Lack of Probable Cause

Here, it is undisputed Officers Pav and LaRocco arrested Plaintiff in her home on January 21, 2021, and Plaintiff did not consent to being arrested. (Marcus Defs' 56.1 Counterstmt. ¶¶45, 48-52.) Thus, the first three elements of false arrest, i.e., the Officers' intent to confine, Plaintiff's knowledge of the confinement, and lack of consent to the confinement, are satisfied. Jocks, 316 F.3d at 134-35. However, based upon the record, it is not clear to the Court whether the confinement was "otherwise privileged." Id. "An arrest is privileged if it is based upon probable cause, for probable cause is a complete defense to a false arrest claim." Guan v. City of N.Y., 37 F.4th 797, 804 (2d Cir. 2022). Whether probable cause for an arrest exists is based upon an evaluation of the "totality of the circumstances," Jenkins v. City of N.Y., 478 F.3d 76, 90 (2d Cir. 2007), i.e., "a full sense of the evidence that led the officer to believe that there was probable cause to make an arrest." Guan, 37 F. 4th at 804 (citing Stansbury v. Wertman, 721 F.3d 84, 93 (2d Cir. 2013)).

The crime for which Plaintiff was arrested was Second Degree Aggravated Harassment pursuant to Penal Law § 240.30(2). (Pl.'s Support Memo, at 14.) "A person is guilty of aggravated

harassment in the second degree when . . . [w]ith intent to harass or threaten another person, he or she makes a telephone call, whether or not a conversation ensues, with no purpose of legitimate communication." N.Y. Penal Law § 240.30(2). The Court acknowledges that the language of this statute is in many ways, amorphous, particularly with regard to the "legitimate purpose" portion of the statute. This is compounded by the facts and circumstances provided to the police officers in this case, including the facts that: (1) the text messages among the parties indicated Plaintiff repeatedly contacted the Marcus Defendants notwithstanding their requests for Plaintiff to stop (see Skorupa Decl. Exs. I, M, ECF Nos. 48-12, 48-16); (2) despite R. Marcus' request for Plaintiff to stop communicating with her, R. Marcus nonetheless repeatedly responded to Plaintiff (see Skorupa Decl., Ex. M); (3) Plaintiff may have been communicating with the Marcus Defendants in an attempt to reach her daughter, but also engaged in at least some communications entirely unrelated to reaching her daughter (see Skorupa Decl. Exs. I, M, ECF Nos. 48-12, 48-16);(4) M. Marcus told Officer Pav in a sworn statement that: (i) Plaintiff's contact with the Marcus Defendants caused her to be "annoyed and alarmed"; (ii) she was afraid Plaintiff would show up at her house and "cause a scene"; and (iii) Plaintiff "[wa]s not acting normal and rational" causing M. Marcus to be "afraid [the prolonged contact was] not going to stop" (see M. Marcus

Police Statement); and (5) R. Marcus told Officer Pav in a sworn statement that Plaintiff caused her "annoyance and alarm" and, based upon her prior interaction with Plaintiff and Plaintiff's interactions with M. Marcus, she was "afraid [Plaintiff] [wa]s going to" continue to contact her again (see R. Marcus Police Statement). The Court finds, based upon these facts, at the very least, "reasonably competent officers could disagree about whether there was probable cause to arrest [Plaintiff]." Smith v. Town of Lewiston, No. 17-CV-0959, 2022 WL 3273241, at *7 (W.D.N.Y. Aug. 11, 2022). Accordingly, on this record and at this stage of litigation, the Court declines to determine, as a matter of law, whether there was probable cause to affect Plaintiff's arrest.

Therefore, Plaintiff's Motion for Summary Judgment as to Counts Two and Eight, is DENIED, and the Marcus Defendants' Motion for Summary Judgment as to these counts and Count Four is similarly DENIED. For these same reasons, the Suffolk County Defendants' Motion for Summary Judgment as to Count Two is denied; however, the Suffolk County Defendants' Motion for Summary Judgment as to Counts Four and Eight is GRANTED based upon Plaintiff's failure to

file a Notice of Claim.[9] [10] (See Pl.'s Reply Re: Suffolk County Defs, ECF No. 50, at 22).

> ### 2. Malicious Prosecution Pursuant to 42 U.S.C. § 1983 (Count Six) and New York State Law (Count Nine)
>
> In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, see, e.g., Murphy v. Lynn, 118 F.3d 938, 944 (2d Cir.1997), cert. denied, 522 U.S. 1115, 118 S. Ct. 1051, 140 L. Ed. 2d 114 (1998); Rohman v. New York City Transit Authority, 215 F.3d 208, 215 (2d Cir. 2000), and must establish the elements of a malicious prosecution claim under state law, see, e.g., Murphy v. Lynn, 118 F.3d at 944; Russell v. Smith, 68 F.3d 33, 36 (2d Cir. 1995); Janetka v. Dabe, 892 F.2d 187, 189 (2d

---

[9] "The New York Court of Appeals has held that the notice-of-claim provisions of the General Municipal Law § 50-i are applicable to a cause of action for 'constitutional torts' in violation of the New York State Constitution." Pratt v. Indian River Cent. Sch. Dist., 803 F. Supp. 2d 135, 146 (N.D.N.Y. 2011); see also Walker v. Vill. of Freeport, No. 15-CV-4646, 2016 WL 4133137, at *13 (E.D.N.Y. June 13, 2016) (recommending dismissal of false arrest claims for failure to timely file a notice of claim), report and recommendation adopted, No. 15-CV-4646, 2016 WL 4132252 (E.D.N.Y. Aug. 2, 2016); Matthews v. City of N.Y., 889 F. Supp. 2d 418, 448 (E.D.N.Y. 2012) (acknowledging plaintiff must comply with notice of claim requirements in order to viably assert malicious prosecution claims against a municipal entity or its employees).

[10] In light of the Court's determination that there is a dispute of fact as to whether Plaintiff's constitutional rights were violated, the Court declines to opine as to whether Officers Pav and LaRocco were entitled to qualified immunity concerning the surviving claims. See Anthony v. City of N.Y., 339 F.3d 129, 137 (2d Cir. 2003) ("Police officers are immune from liability for money damages in suits brought against them in their individual capacities if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'") (further citations omitted). Defendants may raise this defense at trial, if appropriate.

Cir. 1989). To establish a malicious
prosecution claim under New York law, a
plaintiff must prove "'(1) the initiation or
continuation of a criminal proceeding against
plaintiff; (2) termination of the proceeding
in plaintiff's favor; (3) lack of probable
cause for commencing the proceeding; and (4)
actual malice as a motivation for defendant's
actions.'"

Manganiello v. City of N.Y., 612 F.3d 149, 160–61 (2d Cir. 2010)

(citing Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997) (further

citations omitted)). The existence of probable cause is a

"complete defense to a claim for malicious prosecution in New

York." Id. (quoting Savino v. City of N.Y., 331 F.3d 63, 72 (2d

Cir. 2003)).

        a. There is a Dispute of Fact as to Whether
           Officers Pav and LaRocco Maliciously
           Prosecuted Plaintiff Based Upon a Lack of
           Probable Cause

For the same reasons discussed supra Part II.B.1.a, the

Court the Court cannot determine as a matter of law whether there

was probable cause to arrest and charge Plaintiff with a crime.

Therefore, Plaintiff and the Marcus Defendants' Motions for

Summary Judgment as to Counts Six and Nine are DENIED. For these

same reasons, the Suffolk County Defendants' Motion for Summary

Judgment as to Count Six is DENIED; however, its Motion for Summary

Judgment as to Count Nine is GRANTED based upon Plaintiff's failure to file a Notice of Claim.[11] [12]

### 3. Fourth Amendment Violation Pursuant to 42 U.S.C. § 1983 for Arresting Plaintiff in Her Home Without a Warrant (Count Three)

It is undisputed that on January 21, 2021, Officers Pav and LaRocco arrived at Plaintiff's home and arrested her without a warrant. (Suffolk County Defs.' 56.1 Counterstmt. ¶¶43-45 (Suffolk County Defs.' failing to dispute: there was no warrant for Plaintiff's arrest; the Officers arrived at Plaintiff's house at 11:07 p.m.; and "when Pav and LaRocco arrived at Plaintiff's home, they placed Plaintiff under arrest as soon as they made contact with her"). The law is abundantly clear that warrantless searches and seizures inside a home are patently unconstitutional absent exigent circumstances. Payton v. New York, 445 U.S. 573, 588-89 (1980) ("The physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed. To be arrested in the home involves not only the invasion attendant

---

[11] See supra note 8.

[12] Defendant R. Marcus argues she cannot be charged with malicious prosecution because she did no more than "merely provide information to the police." (Marcus Defs' Support Memo, at 24) (citing King v. Crossland Sav. Bank, 111 F.3d 251, 257).) However, as discussed at length supra, there is at least some evidence that R. Marcus went beyond just providing information to authorities when she specifically called upon Officer Pav to arrest Plaintiff. Therefore, the malicious prosecution claims against R. Marcus (Counts Six and Nine) must survive.

to all arrests, but also an invasion of the sanctity of the home, which is too substantial an invasion to allow without a warrant, in the absence of exigent circumstances, even when it is accomplished under statutory authority and when probable cause is present."); see also Loria v. Gorman, 306 F.3d 1271, 1283 (2d Cir. 2002) ("The Supreme Court . . . reiterated the firmly established rule that 'police officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home'"). The record here is entirely devoid of any evidence suggesting there were exigent circumstances which would justify the warrantless seizure of Plaintiff in her home. Accordingly, Plaintiff's Motion for Summary Judgment as to Count Three is GRANTED, and conversely, Suffolk County Defendants' Motion for Summary Judgment as to this Count is DENIED.

### 4. First Amendment Violations Pursuant to 42 U.S.C. § 1983 (Count Five)

Plaintiff alleges Officer Pav, Officer LaRocco, and M. Marcus infringed upon her First Amendment right to Free Speech by affecting her arrest based upon text messages she sent to the Marcus Defendants. (See Am. Compl. at 14.) It bears noting, while Plaintiff does not challenge the constitutionality of the Penal Law which she was arrested for violating, the New York Court of Appeals has determined that the statute itself does not violate

28

the United States Constitution.  People v. Shack, 86 N.Y.2d 529, 535, 658 N.E.2d 706 (1995).

Rather than challenge the constitutionality of the statute itself, Plaintiff argues Defendants LaRocco, Pav, and R. Marcus violated her First Amendment Rights by affecting her arrest based upon purportedly protected speech.  (See Am. Compl. at 14.) "To recover on a [F]irst [A]mendment claim under [Section] 1983, a plaintiff must demonstrate[:] [(i)] that his [or her] conduct is deserving of [F]irst [A]mendment protection[;] and [(ii)] that the defendants' conduct of harassment was motivated by or substantially caused by [plaintiff's] exercise of free speech." Milo v. City of New York, 59 F. Supp. 3d 513, 522 (E.D.N.Y. 2014).

> Freedom of speech ... is not an unfettered right for any U.S. citizen." D.F. ex rel. Finkle v. Bd. of Educ. of Syosset Cent. Sch. Dist., 386 F.Supp.2d 119, 125 (E.D.N.Y.2005), aff'd sub nom. D.F. v. Bd. of Educ. of Syosset Cent. Sch. Dist., 180 Fed.Appx. 232 (2d Cir.2006).  "Speech that constitutes a true threat of violence, by being a serious expression of an intent to cause present or future harm, may be prohibited." Id. (internal quotation marks and citation omitted).  The speaker of a true threat does not need to have the intention of carrying out the threat. Virginia v. Black, 538 U.S. 343, 359–60, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003).  The prohibition on true threats is meant to "protect[ ] individuals from the fear of violence, from the disruption that fear engenders, and from the possibility that the threatened violence will occur." R.A.V. v. St. Paul, 505 U.S. 377, 388, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992).

Id. at 522-23 (dismissing plaintiff's free speech claim as unprotected by the First Amendment where plaintiff, a teacher, told her colleagues "if [she] had a trenchcoat and a shotgun, it would be Columbine all over again").

As discussed at length supra, there is a dispute of fact as to whether Plaintiff's speech was of a threatening and harassing nature.  Indeed, the Court cannot determine, as a matter of law, whether there was probable cause for her arrest under the charged statute.  It logically follows, absent such determination, the Court also cannot determine as a matter of law whether Plaintiff's was protected speech, or whether it was a "true threat" not entitled to First Amendment Protection.[13]  Accordingly, the parties' Motions for Summary Judgment as to Count Five are DENIED.

---

[13] Moreover, the Court has examined the Second Circuit's recent decision in United States v. Dennis and finds that such decision is not inconsistent with the Court's conclusion here.  No. 23-6194, 2025 WL 877430 (2d Cir. Mar. 21, 2025).  In Dennis, the Second Circuit stated:

> a defendant need not precisely or explicitly reference physical harm to communicate a true threat . . . . Thus, a seemingly ambiguous communication is properly considered in context to determine whether it implicitly conveyed a true threat.

Id. at *8. As Plaintiff correctly highlights, (see Notice of Supplemental Authority, ECF No. 60), in applying such standard, the Dennis Court determined, as a matter of law, that a series of electronic communications made by defendant that were "seemingly innocuous" did not constitute true threats, but rather, were simply "distressing" to the recipient.  Id. at *11.

5. <u>Conspiracy Claims Pursuant to 42 U.S.C. § 1983
   (Count One)</u>

   To prove a § 1983 conspiracy, a plaintiff
   must show: (1) an agreement between two or
   more state actors or between a state actor and
   a private entity; (2) to act in concert to
   inflict an unconstitutional injury; and (3) an
   overt act done in furtherance of that goal
   causing damages.

<u>Pangburn v. Culbertson</u>, 200 F.3d 65, 72 (2d Cir. 1999).  Here,

Plaintiff has brought forth sufficient evidence to survive summary

judgment on her conspiracy claims against Pav and R. Marcus

because: (1) R. Marcus asked Officer Pav to arrest Plaintiff (R.

Marcus Dep. Tr. 1/4/23 at 134:11-18; R. Marcus Police Statement at

5); (2) Officer Pav agreed to do so (Marcus Defs' 56.1 Counterstmt.

¶39); (3) Officer Pav then arrested Plaintiff (<u>id.</u> at ¶45); and

(4) as discussed <u>supra</u>, there is a dispute of fact as to whether

Plaintiff's arrest amounted to an "unconstitutional injury."

Accordingly, the Court finds there is a genuine dispute of material

_____

However, on the record presented, the Court cannot draw the same
conclusion here; unlike the defendant in <u>Dennis</u>, whose
communications were known to the court, not all of the
communications made by Plaintiff to the Marcus Defendants are
known.  In particular, the parties dispute whether the voicemails,
left by Plaintiff on M. Marcus' phone, and which have not been
produced in this case, were threatening. (Pl.'s 56.1 Counterstmt.
Re: Marcus Defs. ¶9; Pepper Supp. Decl. Ex. 17, ECF No. 52-2.)
Accordingly, in the absence of such evidence, the Court cannot
determine whether such voicemails were "true threats" not entitled
to First Amendment protection without making a credibility
determination, which it may not do on summary judgment.  <u>Kaytor v.
Elec. Boat Corp.</u>, 609 F.3d at 545.  Therefore, the determination
of whether Plaintiff's speech constituted a "true threat" is to be
made by a jury.

31

fact as to whether Officer Pav and R. Marcus engaged in a conspiracy; therefore, such claim shall proceed to trial. Defendants' Motions for Summary Judgment as to Count One are therefore DENIED.

### C. *Monell* Claims Against the County of Suffolk (Count Seven)

Plaintiff asserts a Section 1983 claim against the County of Suffolk alleging the County has a "policy or custom of having its police officers honor requests from police officers of other jurisdictions." (Am. Compl. at 16.) This is what is commonly referred to as a Monell claim. Monell v. Dep't of Social Servs., 436 U.S. 658 (1978). To establish a claim for Monell liability, Plaintiff must show the County of Suffolk had: "(1) an official policy or custom that (2) caused [her] to be subjected to (3) a denial of a constitutional right." Torcivia v. Suffolk County, New York, 17 F.4th 342, 354–55 (2d Cir. 2021).

> A plaintiff can establish the existence of a
> municipal policy or custom by showing: the
> existence of[ ] (1) a formal policy which is
> officially endorsed by the municipality;
> (2) actions taken or decisions made by
> municipal officials with final decision-
> making authority, which caused the alleged
> violation of plaintiff's civil rights; (3) a
> practice so persistent and widespread that it
> constitutes a custom of which constructive
> knowledge and acquiescence can be implied on
> the part of the policy making officials; or
> (4) a failure by policymakers to properly
> train or supervise their subordinates,
> amounting to deliberate indifference to the

rights of those who come in contact with the
municipal employees.

Cincotta v. Hempstead Union Free Sch. Dist., 313 F. Supp. 3d 386,

410 (E.D.N.Y. 2018) (citing Moray v.City of Yonkers, 924 F. Supp.

8, 12 (S.D.N.Y. 1996)).

Plaintiff fails to make such a showing.  While Plaintiff

alludes to a policy and practice of police officers using PBA cards

in exchange for special treatment from the police (see, e.g. Pl.'s

Reply Re: Suffolk County Defs. at 21-22), Plaintiff has brought

forth no evidence that any such card was utilized in this instant

case, much less that the cards' usage "caused" a constitutional

violation here.  Moreover, other than her bald allegation that

Suffolk County has a policy where police officers "honor requests

from police officers of other jurisdictions", Plaintiff has not

substantiated said allegation with evidence.  (Am. Compl. at 16.)

The County Defendants' Motion for Summary Judgment as to

Plaintiff's Monell claim (Count Seven) is therefore GRANTED.

D. <u>Intentional Infliction of Emotional Distress Claims
   (Count Ten)</u>

Plaintiff asserts a claim for intentional infliction of

emotional distress against the Marcus Defendants.[14]  (Am. Compl.,

---

[14] In Plaintiffs' Reply in Opposition to the County Defendants'
Motion for Summary Judgment, Plaintiff "drop[ped]" her intentional
infliction of emotional distress claim against Officers Pav and
LaRocco and Suffolk County.  (Pl.'s Reply Re: Suffolk County Defs.
at 22 n.8.)  That claim is therefore deemed withdrawn as to those
Defendants.

at 18.)  As the Marcus Defendants correctly point out (see Marcus Defs.' Support Memo at 40):

> In New York, "intentional infliction of emotional distress is a theory of recovery that is to be invoked only as a last resort," when traditional tort remedies are unavailable. See EEOC v. Die Fliedermaus, L.L.C., 77 F. Supp. 2d 460, 472 (S.D.N.Y. 1999) (quoting McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc., 256 A.D.2d 269, 682 N.Y.S.2d 167, 169 (1st Dep't 1998)). Accordingly, "[n]o intentional infliction of emotional distress claim will lie where the conduct underlying the claim falls within the ambit of traditional tort liability." Hansel v. Sheridan, 991 F. Supp. 69, 75 (N.D.N.Y.1998) (McAvoy, Chief Judge).

Moore v. City of N.Y., 219 F. Supp. 2d 335, 339 (E.D.N.Y. 2002) (dismissing claims for intentional infliction of emotional distressed where "the conduct complained of are encompassed in plaintiff's claims for assault battery and malicious prosecution).

Here, Plaintiff alleges she suffered from emotional distress based upon the Marcus Defendants' filing of "false complaints maliciously for the purpose of having Plaintiff arrested and making her spend a night in jail." (Am. Compl. at 18.)  This complained-of conduct falls squarely within her other claims, including but not limited to, false arrest, malicious prosecution, and false imprisonment.  Accordingly, the Marcus Defendants' Motion for Summary Judgment as to Count Ten is GRANTED.

34

CONCLUSION

For the stated reasons, it is HEREBY ORDERED:

I.  Plaintiff's Motion for Summary Judgment as to:

    a. Counts Two, Five, Six, Eight, and Nine are DENIED;

    b. Count Three is GRANTED;

II.  The Marcus Defendants' Motion for Summary Judgment as to:

    a. Counts One, Two, Four, Five, and Six against R. Marcus is DENIED;

    b. Counts One and Six against M. Marcus is GRANTED;

    c. Count Nine is DENIED;

    d. Count Ten is GRANTED;

III.  The Suffolk County Defendants' Motion for Summary Judgment as to:

    a. Count Three is DENIED;

    b. Counts Four, Seven, Eight, and Nine are GRANTED;

IV.  The Marcus Defendants and Suffolk County Defendants' Motions for Summary Judgment as to:

    a. Counts One, Two, Five, and Six, with the exception of Counts One and Six as asserted against M. Marcus, (see Conclusion Part II.B. supra), are DENIED.

V.  It is FURTHER ORDERED that, in accordance with the undersigned's Individual Rules (see Individual Rule VI.A), the parties are directed to file a proposed pretrial order.

VI.  All other requested relief, including the Marcus Defendants'

request for attorneys' fees, is DENIED.


                              SO ORDERED.


                              /s/ JOANNA SEYBERT
                              Joanna Seybert, U.S.D.J.

 Dated: March 31, 2025
        Central Islip, New York